UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DERRICK C. MARTIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:10 CV 109 |
| | ) |
| DARRICK ENGELMAN, | ) |
| | ) |
| Defendant. | ) |

## OPINION and ORDER

Plaintiff Derrick Martin filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging that Fort Wayne Police Detective Darrick Engelman violated his federally protected rights. Martin asserted in his complaint that in July 2009, Detective Engelman was investigating Charles Smith for selling drugs, and that even though there was no evidence of Martin's involvement with Smith, Detective Engelman went to Martin's home and, without probable cause, conducted an illegal search and seizure. The court screened Martin's complaint pursuant to 28 U.S.C. § 1915A and granted him leave to proceed against Detective Engelman in his personal capacity for damages on his Fourth Amendment claim that Detective Engelman conducted an illegal search without probable cause, leading to a false arrest of Martin, the seizure of his vehicle, and his wrongful imprisonment. The court dismissed all other claims.

Defendant has filed a motion for summary judgment pursuant to FED. R. CIV. P. 56, and plaintiff has responded. The standard for reviewing a summary judgment motion is the same regardless of whether a party is represented by counsel. *Outlaw v. Newkirk*, 259 F.3d 833, 836-37 (7th Cir. 2001).

> [T]he plain language of [FED. R. CIV. P.] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986).

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotation marks, ellipsis omitted).

In support of his motion for summary judgment, defendant submits his own affidavit (DE # 45-1 at 1-3), a copy of the search warrant affidavit he prepared (*id.* at 4-7), a copy of the search warrant for Martin's residence (*id.* at 8), and a copy of portions of a deposition taken of Martin (DE # 45-2). In response, plaintiff submits his own affidavit (DE # 49-1), copies of several documents related to the search of his residence, his arrest, and the seizure of his vehicle (*id.* at 10-30), a copy of the deposition of Charles

Smith, taken October 5, 2009 (*id.* at 33-49), and a copy of an Indiana Court of Appeals opinion (*id.* at 50-58).

I.  **DEFENDANT'S MOTION TO STRIKE**

Defendant has filed a motion to strike paragraphs 2-12 and 14 of plaintiff's affidavit (DE # 49-1), arguing that his statements are not within his personal knowledge. The court agrees that several of these paragraphs appear to contain statements which are beyond plaintiff's personal knowledge, but concludes that defendant's motion should still be denied.

For example, in paragraph 5 of his affidavit, plaintiff states that he was not the person from whom the confidential informant bought cocaine on July 1, 2009. Plaintiff would have personal knowledge of whether or not he sold cocaine on July 1, 2009. However, defendant does not allege that his confidential informant purchased drugs from plaintiff on that date, so the fact is irrelevant to the court's analysis.

In paragraph 10, plaintiff states that based on his investigation, defendant applied for a search warrant to search plaintiff's home, and in paragraph 11 he states that on July 6, 2009, an Allen Superior Court judge issued a search warrant. While these facts may not have been within plaintiff's personal knowledge at the time they occurred, they are apparent from the public record in this case and, in fact, are consistent with defendant's version of events.

In paragraph 12, plaintiff states that on July 9, 2009, police officers served a search warrant at his residence. This would be within his personal knowledge, if he was home at the time, and is entirely consistent with defendant's version of events. In

3

paragraph 14, plaintiff states that "as a result of this incident Engelman (sic) had Mr. Martin's 1986 Chevy Monte Carlo SS towed away or seized, exceeding the scope of the search warrant." (DE # 49-1 ¶ 14.) Whether or not his vehicle was seized and towed is almost certainly within plaintiff's personal knowledge.

In sum, the court denies defendant's motion to strike, but will disregard any inadmissible evidence presented in plaintiff's affidavit.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. FACTS

On June 30, 2009, defendant Detective Engelman was contacted by a confidential informant ("CI") who advised him that the CI could purchase crack cocaine from a man the CI referred to as "Chuck," later identified as Charles Smith. (DE # 45-1 ¶ 3.) That afternoon, the CI paid Smith for approximately 2.9 grams of cocaine. (*Id.*) On July 1, 2009, the CI made a second controlled purchase from Smith on Lewis Street. (*Id.* ¶ 4.) Prior to the buy, undercover surveillance detectives went to the area and observed Smith and his vehicle at 1124 East Lewis Street. (*Id.* ¶ 5.) When the CI arrived, Smith exited the porch of 1124 East Lewis Street and completed the transaction with the CI through the window of the CI's vehicle. (*Id.* ¶ 6.) Smith then walked back to the porch of 1124 East Lewis Street. (*Id.*) Thereafter, the CI produced to Detective Engelman the approximately 3.9 grams of cocaine the CI purchased from Smith. (*Id.* ¶ 7.)

Detectives remained in the area after this transaction, and observed Smith exit the porch of 1124 East Lewis Street and conduct what appeared to be "open air" drug transactions in front of the house. (DE # 45-1 ¶ 8.) Detective Engelman states that the

4

Fort Wayne Police Department had also received two recent phone tips regarding 1124 East Lewis, in which the callers said that several black males were dealing drugs from the residence and that there was unusually high vehicle and foot traffic at that location. (*Id.* ¶ 9.)

Based on his investigation, on July 6, 2009, Detective Engelman prepared an affidavit to apply for a search warrant for 1124 East Lewis Street, in which he set forth details of the July 1, 2009, controlled drug transaction in front of 1124 East Lewis, along with additional information obtained in the investigation. (DE # 45-1 ¶ 10, DE # 49 at 17). An Allen Superior Court judge issued a search warrant for 1124 East Lewis. (DE # 45-1 ¶ 11, DE # 49 at 13), authorizing the police to search for:

> Cocaine and derivatives thereof, firearms, cellular phones (and internal phone/text message logs related to drug trafficking), records of drug transactions and/or other financial information related to drug transactions, and any United States currency used to purchase controlled substances by the Fort Wayne Police Department prior to the execution of this warrant, which constitutes evidence of alleged drug transactions and illegal possession of said controlled substances.

(DE # 45-1 at 8.)

On July 9, 2009, Fort Wayne police officers served this search warrant at 1124 East Lewis Street, and searched the residence. (DE # 45-1 ¶ 12.) Officers found a loaded Taurus .45 caliber handgun and approximately 66.7 grams of marijuana in the southeast bedroom. (*Id.*) The police also had Martin's vehicle towed away. (DE # 49-1 ¶ 14, DE # 19 at 15.)

When asked whether he lived at the residence, Martin said that he did, and admitted that the southeast bedroom was his, though he denied ownership of the

handgun and marijuana. (DE # 45-1 ¶ 13.) Martin was placed under arrest for charges including felony Possession of Marijuana (*id.* ¶ 14) and was eventually charged with possession of marijuana and being a serious violent felon in possession of a handgun. Martin went to trial on the charges against him and was found not guilty on April 6, 2010. (DE # 45-2 at 2.)

    B.    DISCUSSION

        1.    *Validity of Search Warrant*

Martin alleges that Detective Engelman violated his Fourth Amendment rights by conducting an illegal search of his residence without probable cause. (DE # 1 ¶ 2.) "The Fourth Amendment, incorporated by the Fourteenth Amendment, provides that '[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated.'" *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000).

The search of Martin's residence was pursuant to a search warrant obtained by Detective Engelman.

> When a police officer, acting in good faith, obtains a warrant and acts within its scope, he has engaged in no official misconduct; it is the magistrate's responsibility to determine whether the officer's allegations constitute probable cause and it is the magistrate's error if the arrest is later determined to have been unlawful. In such a case, the magistrate's issuance of the warrant shields the officer from liability for the illegal arrest. It is one exception to this general rule with which we are concerned here. A warrant does not erect an impenetrable barrier to impeachment of a warrant affidavit. If an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, not only is his conduct the active cause of the

illegal arrest, but he cannot be said to have acted in an objectively reasonable manner.

*Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir. 1985) (citations and footnotes omitted).

A finding of probable cause for a search warrant does not require evidence sufficient for a conviction. *Illinois v. Gates*, 462 U.S. 213, 235 (1983). "Only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause." *Id.*, quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969). Probable cause for issuance of a search warrant may be based on a confidential informant's statement, and "[g]enerally, a controlled buy, when executed properly, is a reliable indicator as to the presence of illegal drug activity." *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) (finding probable cause existed to support issuing a search warrant for the plaintiff's residence where a confidential informant conducted a drug buy there).

In his response to defendant's motion for summary judgment, Martin argues that in order to establish probable cause for a search warrant there must be a nexus between the place to be searched and the evidence sought, *United States v. Carpenter,* 360 F.3d 591 (6th Cir. 2004), and asserts that Detective Engelman "fabricated the search warrant affidavit to apply for a search warrant for 1124 E. Lewis St." (DE # 49 at 4.) Martin argues that Detective Engelman's affidavit "failed to indicate any connection between Smith and the address given or between Smith and any of the criminal activity that supposedly occurred there." (DE # 49 at 5-6.) However, Detective Engelman's affidavit for a search warrant states that on July 1, 2009, Smith exited from the porch of 1124 East Lewis Street, sold drugs to a confidential informant, and then returned to the porch area

7

and eventually entered the house (DE # 45-1 at 6), which does indicate a connection between Smith and 1124 East Lewis Street.

Martin also argues that Detective Engelman's "failure to give names of 'Detectives' who supposedly observed what he believed to be indicative of drug dealing, his failure to give a description of the individual that was involved in 'what appeared to be open air drug transactions,' are hearsay statements from sources whose credibility hadn't been established" (*Id.* at 6). The source of these statements whose credibility Martin argues was not established are police officers, not confidential witnesses or tips from anonymous witnesses and, in any event, "although an informant's first-hand observations would generally be entitled to greater weight, clearly probable cause may be founded on hearsay reports." *United States v. Pless*, 982 F.2d 1118, 1125 (7th Cir. 1992), citing *Franks v. Delaware*, 438 U.S. 154, 165 (1978). The affidavit for a search warrant prepared by Detective Engelmann sufficiently establishes the particulars of the drug buy at 1124 East Lewis Street and the reliability of the confidential informant to establish probable cause for a search warrant.

    2.    *Legality of Seizure of Property*

During the July 6, 2009, search of 1124 East Lewis Street, Fort Wayne Police Officers found and seized a handgun and a baggie containing marijuana in Martin's bedroom. (DE # 45-1 ¶¶ 12, 13.) In his complaint, Martin also alleged that the police also "towed away my red 1986 Chevy Monte Carlo . . . [which] . . . wasn't involved in any illegal activity." (DE # 1 ¶ 3.)

Defendant argues that because the search of Martin's room was pursuant to a valid search warrant, the seizure of the marijuana and pistol found there was not an invalid seizure. The court agrees with defendant that the seizure of the pistol and the marijuana were covered by the search warrant, which this court has already concluded was valid. But it is not apparent from the complaint or Martin's other submissions that he is alleging that the handgun and marijuana were seized illegally. Martin does not mention the handgun or marijuana in his complaint or memorandum opposing summary judgment. Indeed, it is the court's understanding that Martin denied any knowledge of these items and disclaims any possessory interest in either of them.

Plaintiff's complaint, however, clearly asserts that defendant violated his Fourth Amendment rights by seizing his vehicle, which was not covered by the search warrant, and he has produced evidence that his vehicle was towed away. (DE # 49-1 ¶ 14, DE # 19 at 15.) Defendant makes no argument about this allegation either in his memorandum supporting his summary judgment motion or in his reply to the plaintiff's response to his motion for summary judgment, nor has defendant submitted evidence from which this court could conclude that Martin's vehicle was not seized or that the seizure of his vehicle did not violate the Fourth Amendment. Accordingly, defendant is not entitled to summary judgment on the claim that defendant violated the Constitution's Fourth Amendment when he ordered Martin's vehicle to be seized.

    3.    *Legality of Arrest*

Martin alleges that Defendant Engelman arrested him on July 6, 2009, without probable cause. A false arrest claim, asserting an arrest without probable cause,

implicates the Fourth Amendment. *See Booker v. Ward,* 94 F.3d 1052, 1057 (7th Cir. 1996). "Strictly speaking, a claim for false arrest is a claim for the harm of being unlawfully imprisoned through some extrajudicial act that does not amount to legal process, for example, when a police officer performs a warrantless arrest without probable cause. *See, e.g., Porterfield v. Lott,* 156 F.3d 563, 568 (4th Cir.1998); *Singer v. Fulton County Sheriff,* 63 F.3d 110, 117-18 (2d Cir.1995); *Snodderly v. R.U.F.F. Drug Enforcement Task Force,* 239 F.3d 892, 899 n.9 (7th Cir. 2001).

> To succeed on his unlawful arrest claim . . . [the plaintiff] . . . must prove that [the defendants] arrested him without probable cause. A law enforcement officer has probable cause to arrest when the facts and circumstances within his knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense. We evaluate probable cause not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer--seeing what he saw, hearing what he heard.

*Booker*, 94 F.3d at 1057-58 (citations, emphasis, and quotation marks omitted).

The existence of probable cause is an absolute bar to a Fourth Amendment claim for false arrest. *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009); *Juriss v. McGowan*, 957 F.2d 345, 349 n.1 (7th Cir. 1992) ("it is well settled that the actual existence of probable cause to arrest precludes a § 1983 suit for false arrest."). The plaintiff bears the burden of proving the absence of probable cause. *McBride*, 576 F.3d at 706.

A police officer has probable cause to arrest an individual when "the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v.*

*DeFillippo*, 443 U.S. 31, 37 (1979). Officers who have probable cause can arrest a suspect without a warrant. *Smith v. Gomez*, 550 F.3d 613, 618 (7th Cir. 2008). Probable cause does not require overwhelming evidence, only reasonably trustworthy information. *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Because the defendant is the moving party, the court must extract all reasonable inferences from the evidence in the light most favorable to Martin as the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). At the time of Martin's arrest, Detective Engelman knew that police officers had searched the residence at 1124 East Lewis Street, that they found approximately 66.7 grams of marijuana in the southeast bedroom of the residence, and that Martin admitted that he resided in the southeast bedroom of 1124 East Lewis Street. This information was sufficient to establish that probable cause existed to arrest Martin on charges of possession of marijuana. Accordingly, Defendant Engelman is entitled to summary judgment on Martin's false arrest claim. The fact that Martin was eventually found not guilty of the criminal charges filed against him does not change the analysis. Probable cause need not be based upon information sufficient to sustain a conviction. *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002).

    4.    *Qualified Immunity*

Defendant argues that "even if the Court finds that Martin's constitutional rights were violated, Detective Engelmann is entitled to qualified immunity." (DE # 46 at 9.) Because the court has already concluded that the search of 1124 East Lewis Street, the seizure of the pistol and marijuana found in the southeast bedroom of that residence,

and the arrest of the plaintiff did not violate the Fourth Amendment's prohibition against illegal searches and seizures, the court will not address defendant's qualified immunity arguments on these claims.

However, plaintiff also alleges that defendant seized his vehicle in violation of the Fourth Amendment's prohibition on illegal searches and seizures. Defendant's motion for summary judgment does not address this claim, nor does he present a qualified immunity argument on this claim. Accordingly, the court will not address the question of whether defendant had qualified immunity for seizing plaintiff's vehicle.

### III.   CONCLUSION

For the foregoing reasons, the court **DENIES** defendant's motion to strike (DE # 50), and **GRANTS, in part, and DENIES, in part,** defendant's motion for summary judgment (DE # 45). For clarity's sake, the only remaining claim in this case is by plaintiff against defendant for seizure of plaintiff's vehicle in violation of the Fourth Amendment.

Discovery has closed and the dispositive motion deadline has passed; accordingly, the court will set this case for trial under separate order.

                                      **SO ORDERED.**

Date: January 14, 2013

                            s/James T. Moody_____
                            JUDGE JAMES T. MOODY
                            UNITED STATES DISTRICT COURT