**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| **DERRICK C. MARTIN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **No. 1:10 CV 109** |
| ) | |
| **DARRICK ENGELMAN,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

Derrick C. Martin, a *pro se* plaintiff, brought this action under 42 U.S.C. § 1983

alleging that Darrick Engelman, an officer from the Fort Wayne Police Department,

violated his rights in connection with his arrest on July 9, 2009. Summary judgment was

previously granted to defendant on Martin's claims challenging his arrest and the

search of his residence. (DE # 56.) The sole remaining claim is whether the seizure of

Martin's 1986 Chevy Monte Carlo violated his rights under the Fourth Amendment.

(*See id.* at 12.) With the court's permission, defendant has filed a supplemental motion

for summary judgment on this claim. (DE # 77.)

**I.      Legal Standard**

Summary judgment must be granted when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a). A genuine issue of material fact exists when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes

summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

## II.     Facts

The court previously summarized the facts surrounding Martin's arrest as follows:

> On June 30, 2009, defendant Detective Engelman was contacted by a confidential informant ("CI") who advised him that the CI could purchase crack cocaine from a man the CI referred to as "Chuck," later identified as Charles Smith. That afternoon, the CI paid Smith for approximately 2.9 grams of cocaine. On July 1, 2009, the CI made a second controlled purchase from Smith on Lewis Street. Prior to the buy, undercover surveillance detectives went to the area and observed Smith and his vehicle at 1124 East Lewis Street. When the CI arrived, Smith exited the porch of 1124 East Lewis Street and completed the transaction with the CI through the window of the CI's vehicle. Smith then walked back to the porch of 1124 East Lewis Street. Thereafter, the CI produced to Detective Engelman the approximately 3.9 grams of cocaine the CI purchased from Smith.

Detectives remained in the area after this transaction, and observed Smith exit the porch of 1124 East Lewis Street and conduct what appeared to be "open air" drug transactions in front of the house. Detective Engelman states that the Fort Wayne Police Department had also received two recent phone tips regarding 1124 East Lewis, in which the caller said that several black males were dealing drugs from the residence and that there was unusually high vehicle and foot traffic at that location.

Based on his investigation, on July 6, 2009, Detective Engelman prepared an affidavit to apply for a search warrant for 1124 East Lewis Street, in which he set forth the details of the July 1, 2009, controlled drug transaction in front of 1124 East Lewis, along with additional information obtained in the investigation. An Allen Superior Court judge issued a search warrant for 1124 East Lewis, authorizing the police to search for:

> Cocaine and derivatives thereof, firearms, cellular phones (and internal phone/text message logs related to drug trafficking), records of drug transactions and/or other financial information related to drug transactions, and any United States currency used to purchase controlled substances by the Fort Wayne Police Department prior to the execution of this warrant, which constitutes evidence of alleged drug transactions and illegal possession of said controlled substances.

On July 9, 2009, Fort Wayne police officers served this search warrant at 1124 East Lewis Street, and searched the residence. Officers found a loaded Taurus .45 caliber handgun and approximately 66.7 grams of marijuana in the southeast bedroom. The police also had Martin's vehicle towed away. When asked whether he lived at the residence, Martin said that he did, and admitted that the southeast bedroom was his, though he denied ownership of the handgun and the marijuana. Martin was placed under arrest for charges including felony Possession of Marijuana and was eventually charged with possession of marijuana and being a serious violent felon in possession of a handgun. Martin went to trial on the charges against him and was found not guilty on April 6, 2010.

(DE # 56 at 4-6) (internal citations omitted).

The following additional facts pertain to the seizure of Martin's vehicle. Officer

Gary Griffith is a canine officer employed by the Fort Wayne Police Department.

(DE # 77-2, Griffith Aff. ¶ 2.) His canine partner is "Bullet," a drug-detecting dog

certified by the North American Police Work Dog Association. (*Id.*) Bullet has received

training and certification in drug searches, including vehicle searches. (*Id.*) On July 9,

2009, Officer Griffith was requested to assist Fort Wayne Police in executing a search

warrant at the 1124 East Lewis Street residence. (*Id.* ¶ 3.) When they arrived at the

scene, it was requested that Bullet conduct an exterior sniff search around a red 1986

Chevy Monte Carlo. (*Id.*) The Monte Carlo was parked on the street in front of the

Lewis Street residence, and was registered to Martin. (*Id.*; DE # 77-1, Martin Dep. Tr. at

27.) Officer Griffith gave Bullet the command to search the vehicle, and upon doing so

she alerted to the odor of narcotics near the drivers side trunk area. (DE # 77-2, Griffith

Aff. ¶ 4.) He directed Bullet to continue her search, and in doing so she again alerted to

the odor of narcotics near the trunk area. (*Id.*) Officer Griffith informed another officer

on the scene about Bullet's positive responses for narcotics in the vehicle. (*Id.* ¶ 5.) Bullet

then conducted a search inside the residence and alerted to the odor of narcotics in a

second floor bedroom. (*Id.* ¶ 6.) Officer Griffith was later informed that marijuana was

found in the bedroom where Bullet had alerted. (DE # 77-2, Report at 6.)

Martin's vehicle was towed by police on the date of his arrest. (DE # 77-3,

Inventory Form.) Martin was released on bond a few days later, but he did not try to

retrieve the car because he did not have any money. (DE # 77-1, Martin Dep. Tr. at 27.)

He was subsequently re-arrested for a pretrial release violation, and he remained in

custody until April 6, 2010, when he was acquitted on the underlying criminal charges.

(*Id.* at 28, 37-39.) He retrieved his car from the police tow lot on August 25, 2010. (*Id.* at 28; DE # 77-3, Inventory Form.)

## III.    Analysis

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. The Fourth Amendment generally requires a warrant to search personal property, but under the "automobile exception," the warrantless search of a vehicle is permitted in various situations, including when there is probable cause to believe the vehicle contains evidence of criminal activity. *See Arizona v. Gant*, 556 U.S. 332, 346-47 (2009); *see also United States v. Richards,* 719 F.3d 746, 754 (7th Cir. 2013) ("Cars, however, are exempted from the warrant requirement provided officers have probable cause to believe the car contains contraband."). Probable cause for a search exists when "based on the known facts and circumstances, a reasonably prudent person would believe that contraband or evidence of a crime will be found in the place to be searched." *Richards,* 719 F.3d at 754. Probable cause does not require information sufficient to support a conviction, and instead, "[a] fair probability of discovering contraband is enough." *Id.* at 755.

Warrantless seizures of property are also permitted in certain circumstances. *Soldal v. Cook County*, 506 U.S. 56, 71 (1992). Police may seize a vehicle without a warrant if they have probable cause to believe the vehicle is subject to seizure, such as where the vehicle was used in the commission of a crime and is subject to forfeiture under state law. *Florida v. White*, 526 U.S. 559, 561 (1999); *see also G.M. Leasing Corp. v. United States*,

429 U.S. 338, 351-52 (1977) (Fourth Amendment did not prohibit warrantless seizure of cars subject to tax liens from public street). This exception to the warrant requirement is premised on a recognition of "the need to seize readily movable contraband before it is spirited away." *White*, 526 U.S. at 565.

Here, defendant argues that the seizure of Martin's vehicle was proper, based in part on Bullet's positive alerts to the odor of narcotics.[1] (DE # 77.) In his response, Martin appears to claim that Officer Griffith and Bullet were not actually present on the scene. (DE # 80-1.) However, he does not make this assertion in the form of an affidavit or under penalty of perjury, nor does it appear to be based on his own personal knowledge. *See* FED. R. CIV. P. 56(c)(4). Instead, he argues as follows: "The plaintiff, Derrick C. Martin filed in the past a motion to add the Fort Wayne Police Department, the City of Fort Wayne, and the officers that were there at the time of the raid and Gary Griffith wasn't on any of the affidavits as a witness to this incident." (DE # 80-1.) His argument appears to be that since he was not previously made aware of Officer Griffith's presence on the scene, the officer must not have been there. He does not attach

_____

[1] Defendant also argues that Martin consented to the seizure of his car by voluntarily giving Detective Engelman the keys. (DE # 78 at 4.) However, Martin disputes that he gave the officer his keys, and instead asserts that the officer took them out of his pocket when he was handcuffed. (DE # 80-1 at 1.) Defendant argues that this assertion contradicts Martin's deposition testimony (DE # 83), but the transcripts before the court do not bear this out. Instead, as is reflected in the transcripts, Martin stated only "he asked me to see the keys and he went out there, started the car up, and drove it to the flatbed." (DE # 77-1, Martin Dep. Tr. at 27.) His assertion that the officer took the keys from him is not inconsistent with this testimony. Accordingly, Defendant has not established an entitlement to summary judgment on this ground.

any documentation to support his argument, and it is unclear what "affidavits" he is

referring to. He has not pointed to any evidence suggesting that defendant engaged in

wrongdoing or somehow hid Officer Griffith's presence from him during these

proceedings.[2] Officer Griffith attests unequivocally that he was present during this

incident, and Martin does not offer a contrary version of events under oath and based

on his own personal knowledge. He cannot defeat summary judgment with

"speculation" or "innuendo." *See Gunville v. Walker*, 583 F.3d 979, 986 (7th Cir. 2009).

Turning to the merits, the crux of Martin's argument is that Detective Engelman

acted improperly in seizing his vehicle without a warrant. (DE # 80-1 at 3.) However, as

outlined above, the lack of a warrant is not critical; instead, the inquiry is whether the

officer had probable cause for the seizure. *See Soldal*, 506 U.S. at 71; *White*, 526 U.S. at

565. On this point, the record shows that Martin's vehicle was parked in plain view, on

a public street, and in front of a residence where multiple drug buys had occurred

under police surveillance. Martin was found inside the residence when the police were

executing a search warrant, and drugs were found in the bedroom Martin

acknowledged was his. As a result, he was being arrested for drug offenses. Martin

---

[2] Because this case involves a *pro se* party, all discovery was required to be filed.
N.D. IND. L.R. 26-2(a)(2)(A). The docket reflects that the only discovery propounded by
Martin was a request for production asking for Engelman's tax returns and other
documents. (*See* DE # 48.) Engelman objected to this request as untimely since
discovery had closed a month earlier. (*Id.*) Martin did not move to compel a response
and so the discovery was never answered.

reported that his car was fully operable, and a drug-detecting dog twice alerted to the trunk area of the car for the odor of narcotics.

Based on these circumstances, Detective Engelman had probable cause to search the vehicle for drug evidence. *See Gant*, 556 U.S. at 346-47; *see also United States v. Washburn*, 383 F.3d 638, 640-42 (7th Cir. 2004) (police had probable cause to search defendant's vehicle, based in part on positive alert by trained police dog, even though defendant did not have access to the vehicle at the time of his arrest). The officer also had probable cause to believe the vehicle was subject to immediate seizure as having been used in the commission of a drug offense. *See White*, 526 U.S. at 561 (Fourth Amendment did not require police to obtain warrant before seizing automobile from public place when they had probable cause to believe it had been used in criminal activity); *United States v. Pace,* 898 F.2d 1218, 1241 (7th Cir. 1990) (warrantless seizure of vehicle did not violate the Fourth Amendment where police had probable cause to believe vehicle was subject to forfeiture under state law as having been used in the commission of a drug offense); *see also* IND. CODE § 34–24–1–1 (authorizing forfeiture of a vehicle used to transport drugs or to otherwise facilitate the commission of a drug offense). Based on the record, the seizure of Martin's vehicle did not violate the Fourth Amendment.

Detective Engelman further argues that even if the seizure was improper, he is entitled to qualified immunity. (DE # 78 at 9.) The doctrine of qualified immunity protects government officials from liability for civil damages "insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). Qualified immunity is an affirmative defense, but once the defense has been raised, it becomes the plaintiff's burden to defeat it. *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008). In the context of a claim for a Fourth Amendment violation, "qualified immunity affords an added layer of protection" for "officers who reasonably but mistakenly believe that probable cause exists." *Abbott v. Sangamon County*, 705 F.3d 706, 714-15 (7th Cir. 2013).

Here, Martin does not respond to Detective Engelman's qualified immunity defense, nor does he point to any case where a Fourth Amendment violation was found to have occurred under similar circumstances. (*See* DE ## 80, 82.) Under the facts of this case, Detective Engelman had at least an arguable basis for believing the car was subject to search and seizure because it contained drug evidence or had otherwise been used in the commission of a drug offense. *See Gutierrez v. Kermon,* 722 F.3d 1003, 1008 (7th Cir. 2013) (qualified immunity provides shelter for officers who have at least "arguable" probable cause). Therefore, Detective Engelman is entitled to summary judgment. As a final matter, because the case will not be proceeding to trial, defendant's motion in limine will be denied as moot. (*See* DE # 73.)

**IV. Conclusion**

For the reasons set forth above, defendant's supplemental motion for summary judgment (DE # 77) is **GRANTED**. The clerk is **DIRECTED** to enter judgment in favor of defendant Darrick Engelman. Defendant's motion in limine (DE # 73) is **DENIED** as moot.

**SO ORDERED.**

Date: October 22, 2013

        s/ James T. Moody
        JUDGE JAMES T. MOODY
        UNITED STATES DISTRICT COURT